In the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Gricel S. ECHAVARRIA, Attorney at Law:

OFFICE OF LAWYER REGULATION, Complainant,

v.

Gricel S. ECHAVARRIA, Respondent.

Supreme Court

*No. 04–0499–D. Decided May 12, 2004.*

2004 WI 51

(Also reported in 679 N.W.2d 294.)

¶ 1. PER CURIAM. We review the stipulation filed by Attorney Gricel S. Echavarria and the Office of Lawyer Regulation (OLR) pursuant to SCR 22.12[1] concerning Attorney Echavarria's professional misconduct that resulted in her conviction in federal court for conspiracy to produce and transfer false identification documents, counterfeit resident alien cards, and counterfeit social security cards, in violation of 18 U.S.C. §§ 1028(a) and 1546(a), and 42 U.S.C. § 408(a)(7)(C), a Class D felony. The parties stipulated that the appropriate discipline to impose for that professional misconduct is the suspension of Attorney Echavarria's license to practice law for two years, retroactive to the date on which Attorney Echavarria's license to practice law was summarily suspended based on her criminal conviction.

¶ 2. We approve the stipulation and adopt the stipulated facts and conclusions of law. We agree that the seriousness of Attorney Echavarria's misconduct

---

[1] SCR 22.12 provides: Stipulation.

(1) The director may file with the complaint a stipulation of the director and the respondent to the facts, conclusions of law regarding misconduct, and discipline to be imposed. The supreme court may consider the complaint and stipulation without the appointment of a referee.

(2) If the supreme court approves a stipulation, it shall adopt the stipulated facts and conclusions of law and impose the stipulated discipline.

(3) If the supreme court rejects the stipulation, a referee shall be appointed and the matter shall proceed as a complaint filed without a stipulation.

(4) A stipulation rejected by the supreme court has no evidentiary value and is without prejudice to the respondent's defense of the proceeding or the prosecution of the complaint.

warrants the suspension of her license to practice law. We accept the parties' stipulation that a two-year suspension is appropriate discipline for this offense. We further agree that it is appropriate to make the suspension retroactive to the date Attorney Echavarria's license was summarily suspended based on her criminal conviction.

¶ 3. Attorney Echavarria was admitted to practice law in Wisconsin in 2000. In April 2003 she and her husband Victor were indicted in United States District Court for the Western District of Wisconsin on charges relating to the production and sale of counterfeit identification documents. That same month an agent of the FBI and a special agent with the Social Security Administration interviewed Attorney Echavarria. She told the agents that in May 2001 she had learned that her husband was involved in manufacturing fraudulent documents. She said on the average her husband earned between $400 and $500 a month making and selling the fraudulent documents. She said on approximately three occasions her husband asked her to rewrite information on handwritten lists containing names, social security numbers, dates of birth, gender, and ages of persons and she did so. She said after November 2002 her husband occasionally asked her to call the Social Security Administration to verify social security numbers and she did this, using her employer tax identification number and telling social security officials that she was calling to check on a potential or recently hired employee.

¶ 4. Attorney Echavarria told agents that on one or two occasions she made and sold false documents by herself. She said there were times when her husband would ask her to sign a name to a fraudulent document and she did so. She said she and her husband shared

some of the same clients so possibly 80 percent of her clients had illegal status. She told the agents she had seen pictures on her home computer (which had been taken for identification documents) of people she had seen in her law office. Incriminating evidence found at her home included lists of names and social security numbers in her handwriting, cards she had signed for people who could not write, and pictures of people in her home computer that had dealt with her in her law office.

¶ 5. In May of 2003 Attorney Echavarria self-reported her indictment to the OLR through her then counsel. On June 23, 2003, she pled guilty to the conspiracy count, pursuant to a plea agreement. On August 20, 2003, she was sentenced to 27 months in prison. She is currently serving that sentence at Federal Prison Camp in Greenville, Illinois. On November 17, 2003, this court summarily suspended Attorney Echavarria's license based on her criminal conviction.

¶ 6. Attorney Echavarria and the OLR have stipulated that the conduct for which she was convicted constitutes a criminal act that reflects adversely on her honesty, trustworthiness, or fitness as a lawyer, in violation of SCR 20:8.4(b).[2] The parties stipulated that Attorney Echavarria's misconduct was aggravated by her knowledge of and participation in a pattern of misconduct, the element of personal gain resulting from the misconduct, her willful violations of the law, and by the damage her misconduct and criminal con-

---

[2] SCR 20:8.4(b) provides: "It is professional misconduct for a lawyer to: (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects."

viction have caused to the perception of the integrity of lawyers in the legal system.

¶ 7. The stipulation goes on to say that mitigating factors include Attorney Echavarria's lack of prior disciplinary history and her relative lack of experience as a lawyer at the time of her misconduct. The stipulation notes that, although not mitigating factors per se, this court may consider the fact that Attorney Echavarria self-reported her indictment and cooperated with the OLR's investigation. The stipulation also points out that during the course of its investigation the OLR received a substantial number of letters from Attorney Echavarria's friends, relatives, law professors, teachers, and fellow attorneys, all pleading that she be given the chance to again practice law. The stipulation also notes the submissions indicate that Attorney Echavarria, a member of a Puerto Rican family that valued education, overcame poverty to obtain two masters degrees, followed by her law degree from the University of Wisconsin. The stipulation says the submissions describe Attorney Echavarria as hardworking, unfailingly helpful, putting others ahead of herself, and dedicated to the Hispanic community. The stipulation also notes that Attorney Echavarria's sentencing statement reinforces her acceptance of responsibility for her actions and the remorse she feels concerning her conduct.

¶ 8. We adopt the findings of fact and conclusions of law to which the parties have stipulated concerning Attorney Echavarria's professional misconduct. We determine that the seriousness of the misconduct, in light of the aggravating and mitigating factors, warrants the suspension of her license to practice law for two years.

¶ 9. IT IS ORDERED that the license of Gricel S. Echavarria to practice law in Wisconsin is suspended for a period of two years, retroactive to November 17, 2003.

¶ 10. IT IS FURTHER ORDERED that, if she has not already done so, Attorney Echavarria comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.